**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**DANNY LEE GRALL,**

    Plaintiff,

v.                                     **Civil Action No. 2:14-CV-45
The Honorable John Preston Bailey**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security**,

    Defendant.

## ORDER ADOPTING THE REPORT AND RECOMMENDATIONS

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert [Doc. 23]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Seibert for submission of a proposed report and a recommendation ("R & R"). Magistrate Judge Seibert filed his R & R on June 4, 2015, wherein he recommends that this Court deny the Plaintiff's Motion for Summary Judgment, grant the Defendant's Motion for Summary Judgment, and dismiss the plaintiff's complaint. The plaintiff, proceeding *pro se*, timely filed Objections to the R & R on June 17, 2015. For the reasons set forth below, this Court adopts the R & R.

### I. BACKGROUND

On April 18, 2011, the plaintiff, Danny Lee Grall, ("Grall") filed for Social Security disability income benefits alleging a disability onset date of October 28, 2009.[1] This claim

---

[1] Grall previously applied for DIB and supplemental security income benefits on October 19, 2007, but this application was denied by an ALJ decision dated October 27,

was initially denied on August 18, 2011, and again upon reconsideration on October 13, 2011. Administrative Law Judge Jeffrey LaVicka ("ALJ") held a hearing on March 12, 2013, and subsequently denied Grall benefits in a written opinion dated March 27, 2013. R. 10 [Doc. 16-2, at 11]. The ALJ found that Grall was not disabled from October 28, 2009, through June 30, 2010, the date on which Grall was last insured. R. 11 [Doc. 16-2, at 12]. The plaintiff then sought review in this Court. [Doc. 1]. The R & R provides a detailed discussion of the plaintiff's medical history. Therefore, the undersigned will dispense with the same and will reference pertinent records when applicable.

## II. STANDARD OF REVIEW

When reviewing a Magistrate Judge's proposed findings of fact and recommendations, this Court must make a "*de novo* determination of those portions of the report . . . to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Although this Court will review the R & R under a *de novo* standard of review, this Court's review of the underlying ALJ's decision is limited. *See* **Smith v. Schweiker**, 795 F.2d 343, 345 (4th Cir. 1986). Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The standard for the substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to

---

2009. R. 10 [Doc. 16-2, at 11].

support a conclusion.'" ***Richardson v. Perales***, 402 U.S. 389, 401 (1971) (citation omitted). When analyzing whether the ALJ's decision was supported by substantial evidence, this Court must determine whether the ALJ "consider[ed] all relevant evidence." ***Sterling Smokeless Coal Co. v. Akers***, 131 F.3d 438, 339 (4th Cir. 1997).

### III. DISCUSSION

As an initial matter, the ALJ found that Grall met the requirements for DIB benefits only through June 30, 2010. R. 10 [Doc. 16-2, at 11]. Grall does not dispute that finding. Therefore, the ALJ was tasked with whether or not Grall was disabled at any time from October 28, 2009, through June 30, 2010.

In his March 2013 decision, using the five step process outlined in 20 C.F.R. § 404.1520 (West 2014), the ALJ found:

1. Grall did not engage in any substantial gainful activity from October 28, 2009, through June 30, 2010. R. 13.

2. From October 28, 2009, through June 30, 2010, the claimant suffered from the following severe impairments that significantly limited his ability to perform basic work activities for a period of at least 12 consecutive months:

> disc herniation and stenosis of the lumbar spine; residual effects including left leg discrepancy and chronic pain, status post remote motor vehicle accident-related tibial fracture (1986) and subsequent excision surgery (2004); degenerative changes, left hip; affective disorder; and anxiety-related disorder (20 CFR § 404.1520(c)).

3. None of Grall's impairments met the severity criteria of Appendix 1. R. 14.

4. The ALJ found that from October 29, 2009, through June 30, 2010, Grall had the

3

residual functional capacity ("RFC") to perform sedentary work[2] with the following limitations:

> affords opportunity at least every 15 minutes to alternate between sitting and standing for up to 2 minutes, without breaking task; requires no operation of foot controls (bilaterally); requires no crawling, no crouching, no kneeling, no climbing of ladders, ropes or scaffolds, and no more than occasional balancing or climbing of ramps or stairs; accommodates use of a handheld assistive device only for prolonged ambulation or negotiating uneven terrain, while maintaining availability of the opposite upper extremity to lift/carry up to the ascribed exertional limit . . ..

R. 15.

5. Based on vocational expert testimony, the ALJ found that despite Grall's RFC, he could perform work that existed in significant numbers within the national economy, including the jobs of polisher, order clerk, and ticket checker. R. 19.

In sum, Grall makes three objections to the R & R: 1) he objects to the ALJ's credibility assessment regarding his pain[3]; 2) he objects to the ALJ's finding that he can perform the jobs of polisher, order clerk, and ticket checker because he is unable to either stand or sit for extended periods of time; and 3) he argues that his recent surgeries should be considered in the credibility analysis.

---

[2] SSR 83-10 describes sedentary work as follows: *Sedentary work.* The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

[3] Grall lists four objections to the R & R; however, the first two objections deal with the ALJ's credibility analysis.

4

### A. Credibility assessment

The ALJ is directed to consider all evidence, which includes descriptions and statements from the applicant regarding the applicant's abilities. *See* 20 C.F.R. § 404.1545. After the ALJ finds that the claimant has a medically determinable impairment, "the [ALJ] will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4); *see also* **Craig v. Chater**, 76 F.3d 585, 595 (4th Cir. 1996). Therefore, because the ALJ assesses subjective complaints of symptoms when determining the claimant's RFC, the RFC determination relies, in part, on the ALJ's assessment of the claimant's credibility. *See generally* SSR 96-7P, 1996 WL 374186 (Jul. 2, 1996).

The Agency outlines the process for evaluating a claimant's statements of pain:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other

5

evidence in the case record.

SSR 96-7P, 1996 WL 374186, at *2.

The "ALJ has a 'duty of explanation' when making determinations about credibility of the claimant's testimony." *See* **Smith v. Heckler**, 782 F.2d 1176, 1181 (4th Cir. 1986) (citing **DeLoatche v. Heckler**, 715 F.2d 148, 150-51 (4th Cir. 1983)); *see also* **Hammond v. Heckler**, 765 F.2d 424, 426 (4th Cir. 1985). The Fourth Circuit has held that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." **Shively v. Heckler**, 739 F.2d 987, 989 (4th Cir. 1984) (citing **Tyler v. Weinberger**, 409 F. Supp. 776 (E.D. Va. 1976)). This Court has noted that "[a]n ALJ's credibility determinations are 'virtually unreviewable.'" **Ryan v. Astrue**, No. 5:09CV55, 2011 WL 541125, at *3 (N.D. W.Va. Feb. 8, 2011) (Stamp, J.). If the ALJ meets his basic duty of explanation, "[w]e will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" **Sencindiver v. Astrue**, No. 3:08-CV-178, 2010 WL 446174, at *33 (N.D. W.Va. Feb. 3, 2010) (Seibert, Mag. J.) (quoting **Powers v. Apfel**, 207 F.3d 431, 435 (7th Cir. 2000)).

Here, the ALJ found Grall only partially credible concerning the intensity, persistence, and limiting effects of his pain. The ALJ reviewed two assessments Grall prepared concerning his limitations. R. 164, 180 [Doc. 16-6, at 16, 32]. In the report dated May 5, 2011, Grall essentially stated that he is limited in most daily living activities and he can only walk for five minutes before he needs to stop and rest. Grall completed another

6

function report on September 20, 2011, that listed similar limitations.  R. 190 [Doc. 16-6, at 42].

The ALJ compared these statements to medical providers' treatment notes during the relevant time period and evidence pertaining to Grall's previous denial of benefits.  In Grall's previous denial of benefits, the ALJ determined that Grall was capable of performing light exertional activity.  R. 16.  The medical evidence from October 28, 2009, to June 30, 2010, is mostly unremarkable.  For instance, while Grall did present to The Pain Center on November 10 and December 22, 2009, the treatment notes indicate that Grall was ambulatory with the use of his cane. R. 222, 225 [Docs. 16-7, at 4, 7].  In the December visit, Grall reported that the medication decreased his back and left leg pain to a tolerable level.  The ALJ also considered the normal x-ray results taken of Grall's left ankle in July 2010.  R. 230 [Doc. 16-7, at 12].

Further, the ALJ's RFC finding is reinforced by evidence concerning Grall's functional capacity after the date of last insured (June 30, 2010).  For instance, during an October 12, 2010, visit with psychologist William R. Coburn, Grall stated that he stays at home and takes care of his kids while his wife works outside the home, which the ALJ found was inconsistent with Grall's function reports. R. 190, 233 [Doc. 16-6, at 42; Doc. 16-7, at 15].  Moreover, on May 23, 2011, a state agency physician found that Grall could stand for six hours of a eight hour work day. R. 275 [Doc. 16-7, at 57].

Here, this Court finds that the ALJ met his duty of explanation and properly analyzed Grall's complaints of pain.  *See* SSR 96-7P.  Therefore, this Court is directed to give his credibility determinations great weight.  Because this Court finds that the ALJ's credibility

7

assessment is supported by substantial evidence, the petitioner's objections are overruled.

**B.     Ability to perform jobs of polisher, order clerk, and ticket checker**

Grall objects that he could perform the jobs identified by the Vocational Expert ("VE"), arguing: "All of the jobs indicated that he must be able to sit or stand with only up to 15% of time off task. With Mr. Grall's injury to his left leg he is unable to stand for extended periods of time and with the injury to his back, sitting is very painful." [Doc. 24].

At the hearing, the ALJ essentially asked the VE whether Grall could sustain employment with a sedentary exertional level with the further limitations of a sit/stand option every 15 minutes without going off task, no use of foot controls, and limited use of a cane for uneven terrain or prolonged ambulation. *See* Hr'g Tr. 21, R. 46 [Doc. 16-2, at 47]. Given these limitations, the VE testified that the individual could perform the jobs of polisher, order clerk, and ticket checker.

Grall's objection is essentially an objection to the RFC credibility determination previously discussed. As for the inability to stand for long periods of time, the RFC accommodates Grall's need for a sedentary position. This Court acknowledges that the occupational base may very well be eroded for a claimant that can not sit for six hours a day with a sit/stand option. However, as discussed above, after considering all the relevant evidence, the ALJ concluded that as of June 30, 2010, Grall could sit for approximately six hours a day with the option to alternate between sitting and standing every fifteen minutes. Because the ALJ's decision was supported by substantial evidence, this Court will not disturb it.

### C. The relevancy of recent medical treatment

In his last objection, Grall briefly argues his credibility should be bolstered because he underwent three surgeries on his back and left leg in the past year.[4] Insofar as Grall argues that this Court should consider additional medical evidence, this Court finds his argument unpersuasive. Even if this Court were to consider new evidence, any evidence relating to treatment received between June 2014 and June 2015 does not relate to the relevant time period.

### IV. CONCLUSION

For the foregoing reasons, this Court is of the opinion that Magistrate Judge Seibert's Report and Recommendations **[Doc. 23]** should be and is **ADOPTED**. Further, the Plaintiff's Objections **[Doc. 24]** are **OVERRULED**. Therefore, the Defendant's Motion for Summary Judgment **[Doc. 21]** is **GRANTED** and the Plaintiff's Motion for Summary Judgment **[Doc. 20]** is **DENIED**.

Accordingly, this Court hereby **DENIES** and **DISMISSES** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** the this matter be **STRICKEN** from the active docket of this Court. The Clerk is directed to enter a separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

---

[4] It should be noted that Grall did not attempt to supplement the record with additional medical evidence.

**DATED:** August 17, 2015.

_____
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE